

**SIGNED this 17th day of May, 2013**

_____

Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

BETTIE JEAN HOPKINS                                    No. 10-13385
                                                       Chapter 13
                Debtor;

C. KENNETH STILL, Trustee

                Plaintiff,

v.

JAMES F. HOPKINS, MARILYN                 Adversary Proceeding
HOPKINS-DIXON, VIVIAN                      No. 12-1051
HOPKINS-BAILEY, ANTHONY
HOPKINS

                Defendants.

1

# MEMORANDUM

The Trustee has filed this adversary proceeding against the defendants James F. Hopkins, Marilyn Hopkins-Dixon, Vivian Hopkins-Bailey, and Anthony Hopkins. [Doc. No. 1, Complaint].[1] One of the four named defendants, Marilyn Hopkins-Dixon ("Hopkins-Dixon" or "Defendant"), has moved to dismiss this adversary proceeding on the grounds: (1) that the court lacks jurisdiction over the state law fraudulent conveyance claim against non-creditors; (2) that the adversary complaint fails to name her mother, the debtor, Bettie Jean Hopkins ("Debtor"), who is an indispensable party; and (3) that this proceeding fails to state a claim upon which relief can be granted. [Doc. No. 14]. The plaintiff trustee, C. Kenneth Still ("Plaintiff" or "Trustee") opposes the motion to dismiss. [Doc. No. 26].

The court postponed ruling on the motion while it ruled upon the Trustee's objection to the Debtor's plan confirmation in the main bankruptcy case. The court confirmed the plan on September 18, 2012 and scheduled a de novo review for November 11, 2012. [Bankr. Case No. 10-13385, Doc. No. 47]. The de novo review was rescheduled for January 7, 2013 and then again for February 4, 2013 and April 1, 2013. [Bankr. Case No. 10-13385, Doc. No. 50, 56, 59].

On February 4, 2013, at the hearing on the Trustee's objection to confirmation, the court ruled that the Debtor's real property and improvements at issue in this fraudulent transfer adversary proceeding have a fair market value of $45,000. Oral Opinion, Feb. 4, 2013 Hearing, at 12:12 p.m. The court also determined that the value of the life estate was less than $18,500. *Id.* The amount of $18,500 was the sum of the amount the Debtor proposed to pay to unsecured creditors plus the claimed homestead exemption of $12,500. The court determined that the value of the homestead was $18,000 based on the testimony of the Debtor's auctioneer that the life

---

[1] All docket entry reference numbers refer to docket entries for Adversary Proceeding No. 12-1051, unless otherwise noted.

estate was worth 40% of the value of the fee.  Testimony of Bill Anderton, Feb. 4, 2013 Hearing at 11:24 a.m.  Following the hearing on February 4, 2013, the court issued an order allowing the parties to submit briefing regarding the Trustee's objection to confirmation and to address the value of this avoidance action which the court concluded should also be included in the amount paid to creditors to meet the best interest of creditors test. 11 U.S.C. § 1325(a)(4); *In re Hilliard*, No. 11-13347, 2012 WL 1067691 (Bankr. E.D. Tenn. Mar. 12, 2012).  The parties filed briefing in the main bankruptcy case on February 21 and March 8. [Bankr. Case No. 10-13385, Doc. Nos. 62, 63]. The Debtor argued in the main case briefing that "[t]here is no middle ground in the adversary proceeding. The Trustee will either be successful or unsuccessful in the action to set aside the conveyance." [Bankr. Case No. 10-13385, Doc. No. 62, p. 4]. The Trustee contends that the Debtor is not an indispensable party in the adversary proceeding because "[t]he resolution of the adversary will not affect the Debtor's right to exemption." [Bankr. Case No. 10-13385, Doc. No. 63, p. 2].

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The court has determined that (a) it has jurisdiction over this matter or can recast its ruling as proposed findings of fact and conclusions of law; (b) the Debtor is not an indispensable party under Fed. R. Civ. P. 19; and (c) the Trustee has adequately alleged the elements of his claim. Therefore, the court will DENY the Defendant's motion to dismiss.

Further, because the court is not dismissing the complaint, the court finds that the value of this proceeding is in excess of $500. Therefore, the court will sustain the Trustee's objection to the confirmation of the plan. Having found that the action is likely to produce more than $500

3

for the estate, the plan as proposed does not provide more for creditors than they would get in a

Chapter 7 liquidation.

## I.        Background Facts

The Debtor filed her bankruptcy petition on June 11, 2010. [Bankr. Case No. 10-13385,

Doc. No. 1].  The Debtor originally filed the case as a Chapter 7 bankruptcy case. On Schedule A

relating to real property assets, the Debtor listed that she owned a life estate in a single family

residence located at 204 Lakeshore Drive, McMinnville, Tennessee ("Property"). *Id.* at p. 15.

The Debtor listed the current value of her interest in the property as $12,500. *Id.* On Schedule C

relating to exemptions, the Debtor listed her single family residence and an exemption valued at

$12,500 based on Tenn. Code Ann. § 26-2-301(e). The Debtor listed unsecured debt in an

amount of $42,330.39 in Schedule F of her bankruptcy petition and listed exemptions totaling

$15,809, which included $3,309 for personal property  and $12,500 for her life estate, the

maximum value allowed under Tennessee law for a homestead exemption. [Bankr. Case No. 10-

13385, Doc. No. 1, pp. 20, 23-25].

On June 4, 2012 the Debtor moved to convert the Chapter 7 case to a Chapter 13

bankruptcy case. *Id.* at Doc. No. 32. The court granted the motion on June 27, 2012, and the

current Trustee was added to the case. On August 2, 2012, following the Debtor's conversion of

the case from Chapter 7 to Chapter 13, this court granted a motion to substitute the Chapter 13

Trustee for the former Chapter 7 trustee as the Plaintiff in this action. [Doc. No. 23].

## A.        The Plan Proposal

The Debtor filed her Chapter 13 plan on July 10, 2012. [Bankr. Case No. 10-13385, Doc.

No. 38]. The plan proposed that she would pay $100 per month via direct pay. *Id.* Those

payments will generate at most a dividend of $6000 for unsecured creditors. The assets available

for distribution to unsecured creditors under a Chapter 7 would be the value of the Debtor's life estate and the value of the recovery from this adversary proceeding. If this avoidance action is successful, the trustee could sell the fee interest in the property for a value of $45,000 less the sale expenses. The proofs of claim filed in the case total $14,756.81 although the Debtor listed over $42,000 in debt on Schedule F. If the avoidance action is successful, the creditors would be paid in full. The Debtor's plan proposes less than a 50% dividend.

**B.      The Fraudulent Transfer Complaint**

On June 5, 2012 the Chapter 7 trustee filed the complaint in this adversary proceeding against the Defendant and her three siblings. [Doc. No. 1, Complaint]. The Complaint does not assert any claims against the Debtor herself, only her four children. It seeks to avoid the transfer that divided the Debtor's fee interest in the real property into a life estate and a remainder interest pursuant to 11 U.S.C. § 544 and Tenn. Code Ann. § 66-3-301 *et seq. Id.* at ¶ 1. The Chapter 7 trustee alleged that

> [w]ithin three years of the date of her voluntary petition, the Debtor transferred the remainder of the property located on 204 Lakeshore Drive, Map 68B, Group A, Parcel Number 6 in Warren County, Tennessee to James F. Hopkins, Marilyn Hopkins-Dixon, Vivian Hopkins-Bailey, and Anthony Hopkins. Defendant retained a life estate in said property.

*Id.* at ¶ 4. The transfer was made by a warranty deed recorded in Warren County, Tennessee on December 14, 2007. The consideration recited in the warranty deed was $1.00. Two and a half years later, she filed bankruptcy. The trustee alleged that the transfer was a fraudulent conveyance that "should be set aside and held for naught" under Section 544 and Tenn. Code Ann. § 66-3-101 *et seq.* The trustee alleged that the transfer was made to insiders, the Debtor's children, and was intended to hinder, delay or defraud creditors. *Id.* at ¶¶ 10-11. The trustee further asserted that the Debtor did not receive reasonably equivalent value for the transfer

5

because the Debtor transferred the remainder interests without consideration. He further

contended that the Debtor was unable to service her $42,000 in debt due to her fixed income so

that she was incurring debts beyond her ability to pay them as they came due. *Id.* at ¶ 11. The

trustee alleged that the Debtor was insolvent at the time of the transfer and sought a "judgment

from the Defendants avoiding the transfer of the subject property to them and vest[ing] free and

clear title of said property to the Estate for purposes of sale." *Id.* at p. 3. The Trustee seeks to

avoid the transfer that gave the defendants remainder interests in the Property while allowing the

Debtor to retain a life estate.

### C.        Objection to Confirmation

On August 13, 2012 the Trustee objected to the confirmation of the Debtor's Chapter 13

plan. [Bankr. Case No. 10-13385, Doc. No. 43]. The  basis was that the "value, as of the

effective date of the plan, of property to be distributed under the plan on account of each allowed

unsecured claim is less than the amount that would be paid on such claim if the estate of the

debtor(s) were liquidated under Chapter 7 as required under 11 USCA § 1325(a)(4)." *Id.* The

Trustee also noted that this objection was "Pending Adversary for Real Estate & Life Estate." *Id.*

The Trustee further objected that the Debtor had not committed all of her disposable income to

the plan. *Id.* The Trustee has not pursued the latter objection regarding disposable income and

the court will treat that objection as having been withdrawn.

Based on the parties' arguments before the court at the hearing in the main case on April

1, 2013, the court concludes that the Defendant Hopkins-Dixon's motion to dismiss and the

Trustee's objection are now ripe for review.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "treat as true all of the well-pleaded allegations of the complaint." *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)).  In addition, a court must construe all allegations in the light most favorable to the plaintiff.  *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007).  The complaint " 'must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.' " *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

In *Twombly* the Supreme Court emphasized that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

127 S.Ct. at 1964-65 (citations omitted).  *See also, Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986) (noting that "[a]lthough for the purposes of this motion to dismiss we must

take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation").

### III.    Analysis

### A.    This Court's Jurisdiction over this Fraudulent Transfer Proceeding

The Defendant raises several arguments regarding why this court should dismiss this adversary proceeding. The first issue raised is this court's jurisdiction over the Plaintiff's claims. The Defendant relies on *Stern v. Marshall* and *Granfinanciera, S.A. v. Nordberg* in support of her argument that this court does not have jurisdiction to decide this preference and/or fraudulent transfer matter. __ U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

In *Stern* the Supreme Court addressed whether the bankruptcy court had jurisdiction over a state law counterclaim filed by the estate against a third party who had filed a claim against the estate. 131 S.Ct. 2594. The debtor, who was a billionaire's third wife known by the name Anna Nicole Smith, filed suit in Texas state probate court against her stepson prior to the death of her husband claiming that the stepson  fraudulently induced her husband to sign a living trust that excluded her. *Id.* at 2601. Following the death of her husband, the debtor, who passed away during the course of the litigation, filed a petition for bankruptcy in bankruptcy court in California. *Id.* The stepson then filed a complaint in the bankruptcy proceeding claiming that the debtor had defamed him by inducing her attorneys to inform the media that he engaged in fraud to obtain his deceased father's estate. *Id.* The stepson also filed a proof of claim in the bankruptcy case for his defamation action. The debtor filed a counterclaim against the stepson claiming tortious interference with the gift she expected from her late husband. *Id.*

The Supreme Court then addressed whether the bankruptcy court had jurisdiction over the debtor's state law counterclaim of tortious interference. The Court determined that although "§ 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on [the debtor's] counterclaim, Article III of the Constitution does not." *Id.* at 2608.

Many courts have addressed whether bankruptcy courts have jurisdiction over preference actions and fraudulent transfer actions following the Supreme Court's ruling in *Stern*. Some courts find jurisdiction, some do not, and some address the issue, but decline to rule one way or the other. *See e.g., Burtch v. Seaport Capital, LLC (In re Direct Response Media)*, 466 B.R. 626 (Bankr. D. Del. 2012) (discussing the broad range of views taken by various courts interpreting *Stern*).

The Sixth Circuit is one of the first Circuit Courts of Appeal to address the ruling in *Stern*. *See Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012). In *Waldman* the Sixth Circuit addressed a situation in which a debtor filed an adversary proceeding objecting to the secured claims of a creditor on the basis of fraud and in which the debtor sought affirmative relief in the form of damages. *Id.* at 914-15. The debtor claimed that the defendant had acquired his debts and assets through the use of fraud. *Id.* The debtor sought to discharge a judgment of the defendant against the debtor, a judgment lien on the debtor's property and a mortgage on the debtor's residence. *Id.* The debtor also sought affirmative relief such as specific performance and damages. *Id.* The bankruptcy court awarded the debtor almost $1.2 million in compensatory damages and $2 million in punitive damages. *Id.* at 915. Both parties had agreed that the debtor's claims were core. *Id.* at 917.

In addressing whether the bankruptcy court had jurisdiction to adjudicate the disallowance claims against the defendant, the Sixth Circuit determined that such claims arose

9

under the bankruptcy statute and were "part and parcel of the claims-allowance process in

bankruptcy." *Waldman*, 698 F.3d at 920. The Court continued "[u]nder *Stern*, therefore, the

bankruptcy court was authorized to enter final judgment as to these claims." *Id.* The Court held

that "the bankruptcy court here was authorized to enter final judgment on [the debtor's]

disallowance claims." *Id.* at 921.

However, the Court concluded that the bankruptcy court did not have "core" jurisdiction

over the debtor's affirmative claims "which required him to prove facts beyond those necessary

to his disallowance claims." *Waldman*, 698 F.3d at 921. The Sixth Circuit determined that "[t]he

bankruptcy court's judgment with respect to those claims, therefore, was entered in violation of

Article III." *Id.*

Despite having found that bankruptcy court had exceeded its jurisdiction,  the Court

found that the debtor's claims were "related to" the bankruptcy case. Therfore the Court

reasoned that the bankruptcy court could  submit proposed findings of fact and conclusions of

law. The Court explained:

> But [the debtor's] affirmative claims are not core. Whether a proceeding is core is
> determined on a claim-by-claim basis. "A core proceeding either invokes a
> substantive right created by federal bankruptcy law or one which could not exist
> outside of the bankruptcy." Neither is true here: [the debtor's] affirmative claims
> are based on Kentucky law, not federal bankruptcy law; and he could have filed
> them as easily before he declared bankruptcy as afterward. Nor do the claims fall
> within the types of proceedings listed as core in § 157(b)(2). [The debtor's]
> affirmative claims are just ordinary state-law claims for fraud. Thus they are only
> "related to" the bankruptcy estate, which means the bankruptcy court may submit
> proposed findings of fact and conclusions of law for them.

*Id.* at 921-922 (quoting *Lowenbraun v. Canary*, 453 F.3d 314, 320 (6th Cir. 2006)).

In reviewing the *Stern* decision and the rulings relied upon by the Supreme Court in

*Stern*, the Sixth Circuit opined in dicta its view of a bankruptcy court's jurisdiction over

fraudulent transfer cases.  *Waldman*, 698 F.3d at 918-919. The court explained:

10

> Next came *Granfinanciera, S.A. v. Nordberg*, which held that the public-rights doctrine does not allow a bankruptcy court to decide a fraudulent-conveyance claim filed by a bankrupt estate's trustee against a non-creditor. 492 U.S. 33, 55, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). By means of such a claim, the estate seeks to recover property that the debtor transferred in anticipation of bankruptcy. Fraudulent-conveyance claims, *Granfinanciera* said, "constitute no part of the proceedings in bankruptcy." They are "quintessentially suits at common law that more nearly resemble state-law contract claims . . . to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." Thus, only an Article III court can enter final judgment on such a claim.

*Id.* at 918-919 (quoting *Granfinanciera*, 492 U.S. at 56).

This court asked the parties to address the *Waldman* decision and this dicta in an oral hearing held on April 1, 2013. Both parties agreed that based on the *Waldman* decision, even if the court does not have constitutional authority to issue a final judgment regarding the Trustee's fraudulent transfer claim, this court can issue proposed findings of fact and conclusions of law as the decision in *Waldman* made clear. *See Waldman*, 698 F.3d at 922. The Sixth Circuit directed the bankruptcy court in *Waldman* to "recast its judgment as to [the debtor's] affirmative claims as proposed findings of fact and conclusions of law, which the district court shall review de novo. In doing so, the district court may 'accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.'" *Id.* (quoting Fed. R. Bankr. P. 9033(d)). Therefore, this court concludes that even if it does not have jurisdiction over the Trustee's fraudulent transfer action, the court can recast its decision as proposed findings of fact and conclusions of law, if necessary. The court will thus proceed to issue a ruling on the merits of the Defendant's motion to dismiss.

### B.    Whether the Debtor is an Indispensable Party to this Adversary Proceeding

The Defendant contends that the Debtor is an indispensable party to this adversary proceeding and that it is now too late for the Trustee to add her pursuant to Fed. R. Civ. P. 19,

incorporated into adversary proceedings by Fed. R. Bankr. P. 7019, due to the expiration of the

statute of limitations. The court will first address whether the Debtor is an indispensable party.

### 1.    Fed. R. Bankr. P. 7019

Federal Rule of Civil Procedure 19, incorporated into adversary proceedings by Federal

Rule of Bankruptcy Procedure 7019, governs the addition of indispensable parties. Rule 19 states

in pertinent part:

> (1) ***Required Party.*** A person who is subject to service of process and whose
>     joinder will not deprive the court of subject-matter jurisdiction must be joined
>     as a party if:
>     (A) in that person's absence, the court cannot accord complete relief
>         among existing parties; or
>     (B) that person claims an interest relating to the subject of the action and is
>         so situated that disposing of the action in the person's absence may:
>     (i)     as a practical matter impair or impede the person's ability
>             to protect the interest; or
>     (ii)    leave an existing party subject to a substantial risk of
>             incurring double, multiple, or otherwise inconsistent
>             obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Rule 19(b) provides guidance to courts regarding actions in which

joinder is not feasible and notes that "the court must determine whether, in equity and good

conscience, the action should proceed among the existing parties or should be dismissed." Fed.

R. Civ. P. 19(b).

The Sixth Circuit has outlined a three-step process for "[a]ssessing whether joinder is

proper under Rule 19." *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). The

Court directed:

> First, the court must determine whether the person or entity is a necessary party
> under Rule 19(a). Second, if the person or entity is a necessary party, the court
> must then decide if joinder of that person or entity will deprive the court of
> subject matter jurisdiction. Third, if joinder is not feasible because it will
> eliminate the court's ability to hear the case, the court must analyze the Rule
> 19(b) factors to determine whether the court should "in equity and good
> conscience" dismiss the case because the absentee is indispensable. Thus, a

person or entity "is only indispensable, within the meaning of Rule 19, if (1) it is necessary, (2) its joinder *cannot* be effected, and (3) the court determines that it will *dismiss the pending case* rather than proceed in the case without the absentee."

*Id.* at 666 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 8, 111 S.Ct. 315 (1990); *Western Maryland Railroad Co. v. Harbor Ins. Co.*, 910 F.2d 960, 961 (D.C. Cir. 1990); 4 *Moore's Federal Practice* § 19.02[3][c], at 19-22).

### 2.    Application of Rule 7019

In applying the requirements of Fed. R. Bankr. P. 7019, the court finds that the only real issue is whether the Debtor has an interest in the real property that is the subject of this adversary proceeding and is so situated that disposing of the adversary proceeding in the Debtor's absence may as a practical matter impair or impede the Debtor's ability to protect whatever interest she has. Fed.R.Civ. P. 19(a)(1)(B)(i). As for the other requirements, the court finds they are not determinative. Jurisdiction is not affected by joinder as discussed in Section III.A. The "other party" is the Debtor, and if joined the issue would involve the Debtor's claim of an exemption. Second, the court can accord complete relief among the existing parties without the Debtor. No cross claims involving the Debtor have been raised. Finally, there is no evidence that the existing parties might incur double, multiple or other obligations if the adversary proceeding continues without the Debtor. Therefore, the court is left only to analyze the applicability of Rule 19(a)(1)(B)(i).

The parties generally agree that where a transferor has retained no interest in the property at issue, the transferor is not an indispensable party. In *Allan v. Moline Plow Co.*, cited by the Defendant, the Eighth Circuit explained the reasoning behind not determining the grantor or transferor to be an indispensable party where he has not retained any interest in the property at issue:

> In a suit to set aside a fraudulent conveyance, the grantor is not an indispensable party defendant where he has retained no interest, either legal or equitable, in the property conveyed. The reasons for the rule are these: The property in such a case has irrevocably passed from the grantor's control; he cannot be prejudiced by a decree which subject[s] such property to the payment of his debts; and he cannot enjoy any of the fruits of a successful prosecution of the suit to set aside the fraudulent conveyance, for, after the creditor's demand is satisfied, the remainder of the fund goes to the fraudulent grantee. In the instant case, the Illinois Company retained no interest in the property conveyed.

14 F.2d 912, 915 (8th Cir. 1926) (citations omitted).

In *McCutchen v. Pigue*, cited by the Trustee, the transferor conveyed 250 acres of land to the transferee defendant. 51 Tenn. 565, 1871 WL 370 (Tenn. Sup. Ct. 1871). The trustee filed suit alleging that the transfer was fraudulent because it was made while the transferee defendant was insolvent and for no consideration. *Id.* at 566-67. The court concluded that the transfer was fraudulent, but addressed whether the necessary parties were included in the lawsuit as both the insolvent transferor and transferee had both died. *Id.* at 568-69. The court concluded that the insolvent transferor was not a necessary party:

> The deed from [the transferor] to [the transferee] is absolute—it conveys all of [the transferor's] interest. There is no reservation of any interest. Though the deed may be fraudulent as against his creditors, it is good as between him and [the transferee]. He, therefore, in no event, can have any interest in the land, or its proceeds. Neither his administrator nor his heirs were necessary parties. The legal title was in [the transferee] at his death—this descended to his only child, who is regularly before the Court. The administrator of [the transferee] could have no interest in the land, and he was not, therefore, a necessary party. . . .

*Id.* at 569. The court ordered the deed set aside for fraud. *Id.*

The parties disagree on whether the transferor is an indispensable party in those cases in which the transferor retains an interest in the property that is the subject of the fraudulent transfer suit. The Defendant cites a number of cases from state courts addressing fraudulent transfers involving the transfer of only part of the transferor's property interest. In those cases, the transferor was an indispensable party. *See Scoggins v. Fredrick*, 629 F.2d 426 (5th Cir. 1980).

14

In support of the Trustee's position that the Debtor is not an indispensable party, he cites bankruptcy cases in which the transfers are either complete transfers of the debtor's interest or are the granting of a lien. *Buffington v. Harvey*, 95 U.S. 99 (1877); *Small v. Gilbert*, 56 F.2d 616 (D. Me. 1932). The court has found very few bankruptcy cases addressing the necessity of the debtor-transferor being a party to the fraudulent transfer suit where the debtor has retained a property interest.

In one case, *Tapper v. Herbst (In re Herbst)*, involving a debtor who conveyed joint interests in his property to his father and wife, the court found that under Massachusetts law, the Chapter 13 debtor was a necessary party in ruling on a motion to dismiss filed by the debtor who had been named as a defendant. 76 B.R. 882 (Bankr. D. Mass. 1987).[2]

The court finds that the varied results in these cases cited by the parties arise from the respective courts' view of the debtor's interest at the time the fraudulent transfer suit is brought. The Defendant would have the court focus on the retention of a real property interest by the Debtor and the potential that a judgment in favor of the Trustee will change the Debtor's life estate to a fee interest which the Trustee seeks to sell. That result will require the Debtor to pay more to keep her house or lose the place where she lives as a result of the Trustee's sale. On the other hand, the Trustee argues that "the Debtor has no interest in the property that could be affected, except that which is in the property of the estate." [Doc. No. 26, Trustee's Memorandum in Opposition to Motion to Dismiss, p. 14]. The Trustee argues that the Debtor effectively transferred whatever real property interest she retained to the estate when she filed bankruptcy. He contends that she does not have an interest in the real property until it revests in

---

[2] The issue arose in the *In re Herbst* case in an unusual way. The debtor had filed a motion to be dismissed from the case on the basis that he no longer had an interest in the property. *In re Herbst*, 76 B.R. at 883. The court denied the motion noting that the debtor was a joint tenant and co-owner of the property. The plan also provided that if the trustee prevailed the property would become part of the estate. Because the situation could "leave the Debtor with the difficult choice of either selling his residence to fund the plan or increasing his payments under the plan," the court found the debtor had to be included as a party to protect that interest. *Id.* at 884.

her. What she has is a right to claim an exemption and that will not be affected by the litigation.

The court finds the Trustee's argument more persuasive for the following reasons.

### 3.      The Debtor's Interest

Under Section 541(a)(1) of the Bankruptcy Code, all of the Debtor's equitable and legal

interests became property of the estate, including the Debtor's life estate. In 1978, the concept of

property of the estate was changed, and the definition of property of the estate included the

debtor's " 'title' to property, which is an interest, just as are a possessory interest or a leasehold

interest." H.R. Rep. No. 595, at 367-368 (1977); S. Rep. No. 989, at 82-83 (1978). It was

expanded to "include all property of the debtor, even that needed for a fresh start. After the

property comes into the estate, then the debtor is permitted to exempt it under 11 U.S.C. § 522

and the court will have permission to determine what property may be exempted and what

remains as property of the estate." *Id.*   The Debtor owned the life estate at the time she filed her

case. She may only regain that property interest through her exemption under Section 522,

abandonment under Section 554 or revesting under Section 1327(b). *See* 11 U.S.C. §§ 522, 554,

1327(b). In this case there has been no abandonment by the Trustee, nor has the property interest

revested in the Debtor. The order of confirmation specifically provides that "Property of the

estate does not vest in the debtor(s) until completion of the plan." [Bankr. Case No. 10-13385,

Doc. No. 47, Order Confirming Plan]. If the Debtor completes her chapter 13 plan, the property

will revest, but at this time her life estate belongs to the Trustee. With respect to whether she has

removed her interest in the real property through exemption, the court must review her

Schedules.

Debtor listed her life estate interest on her bankruptcy schedules. Schedule A – Real

Property states the following:

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Single Family Residence Location: 204 Lakeshore Drive, McMinnville TN 37110** | **Life Estate** | **-** | **$12,500.00** | **0.00** |

[Bankr. Case No. 10-13385, Doc. No. 1, p. 15]. On Schedule C-Exemptions, the Debtor listed

the following relating to her life estate:

| Description of Property | Specific Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **<u>Real Property</u> Single Family Residence Location: 204 Lakeshore Drive, McMinnville TN 37110** | **Tenn. Code Ann. § 26-2-301(e)** | **$12,500.00** | **$12,500.00** |

*Id.* at p. 20.

Tennessee's homestead exemption statute allows the Debtor to exempt a homestead  "not

exceeding twelve thousand five hundred dollars ($12,500) upon real property that is owned by

the individual and used by the individual as a principal place of residence." Tenn. Code Ann. §

26-2-301(e). The statute only provides for a monetary amount of exemption, not a guaranty of  a

possessory right in the property serving as the Debtor's residence. There is some case law that

characterizes the homestead right as "a right of occupancy." *In re Arwood*, 289 B.R. 889, 896

(Bankr. E.D. Tenn. 2003) (citing *Carey v. Carey*, 43 S.W.2d 498 (1931)). However, even that

authority noted that a remainder or reversionary interest could be sold subject to the homestead

exemption. *In re Arwood*, 289 B.R. at 896 (citing *In re Walls*, 45 B.R. 145, 147 (Bankr. E.D.

Tenn. 1984)).

The court finds that the U.S. Supreme Court case, *Schwab v. Reilly*, is pertinent to the parties' dispute here. 130 S.Ct. 2652 (2010). In that case the Court addressed a conflict among Circuit Courts of Appeal regarding "what constitutes a claim of exemption to which an interested party must object under § 522(*l*)." *Id.* at 2657. The court summarized its ruling:

> The issue is whether an interested party must object to a claimed exemption where, as here, the Code defines the property the debtor is authorized to exempt as an interest, the value of which may not exceed a certain dollar amount, in a particular type of asset, and the debtor's schedule of exempt property accurately describes the asset and declares the "value of the claimed exemption" in that asset to be an amount within the limits that the Code prescribes. We hold that, in cases such as this, an interested party need not object to an exemption claimed in this manner in order to preserve the estate's ability to recover value in the asset beyond the dollar value the debtor expressly declared exempt.

*Id.* at 2658 (citation omitted).

In *Schwab* the debtor attempted to exempt certain business equipment related to her cooking business. On her Schedule B she included an itemized list of cooking and kitchen equipment, and she assigned an estimated market value of $10,718. *Schwab*, 130 S.Ct. at 2657. On Schedule C the debtor claimed a tools of the trade exemption in the amount of $1,850 pursuant to Section 522(d)(6) and a miscellaneous exemption of $8,868 pursuant to Section 522(d)(5). *Id.* The total value of these claimed exemptions was the value the debtor listed on Schedule B as the estimated market value of the equipment. *Id.* at 2658. Under Fed. R. Bankr. P. 4003(b) an interested party must object to the claimed exemption or "a claimed exemption will exclude the subject property from the estate even if the exemption's value exceeds what the Code permits." *Id.* (citing 11 U.S.C. § 522(l); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642-43, 112 S.Ct. 1644 (1992)).  The trustee failed timely to object to the claimed exemption because the dollar value the debtor assigned to her equipment fell within the limits established in Sections 522(d)(5) and (d)(6). *Id.* An appraisal of the equipment revealed that the equipment could be

worth around $17,200. Following the appraisal the trustee moved the bankruptcy court for

permission to auction off the equipment to give the debtor her claimed exemption of $10,718 and

to provide the remainder to the debtor's creditors. The debtor opposed the motion and argued

that "by equating on Schedule C the total value of the exemptions she claimed in the equipment

with the equipment's estimated market value, she had put [the trustee] and her creditors on notice

that she intended to exempt the equipment's full value, even if the amount turned out to be more

than the dollar amount she declared and more than the Code allowed." *Id.*

The Supreme Court agreed with the trustee that the trustee "had no obligation to object to

the exemption in order to preserve for the estate any value in [the debtor's] business equipment

beyond the total amount ($10,718) [the debtor] properly claimed as exempt." *Id.* at 2661. The

Court explained its conclusion:

> The portion of § 522(*l*) that resolves this case is not, as [the debtor] asserts, the
> provision stating that the "property claimed as exempt on [Schedule C] is exempt"
> unless an interested party objects. Rather, it is the portion of § 522(*l*) that defines
> the target of the objection, namely, the portion that says [the trustee] has a duty to
> object to the "list of property that the debtor claims as exempt *under subsection
> (b)*." (Emphasis added.) That subsection, § 522(b), does *not* define the "property
> claimed as exempt" by reference to the estimated market value on which [the
> trustee] and the Court of Appeals rely. Section 522(b) refers only to property
> defined in § 522(d), which in turn lists 12 categories of property that a debtor may
> claim as exempt. As we have recognized, most of these categories (and all of the
> categories applicable to [the debtor's] exemptions) define the "property" a debtor
> may "clai[m] as exempt" as the debtor's "interest" – up to a specified dollar
> amount – in the assets described in the category, *not* as the assets themselves.
> Viewing [the debtor's] form entries in light of this definition, we agree with [the
> trustee] and the United States that [the trustee] had no duty to object to the
> property [the debtor] claimed as exempt (two interests in her business equipment
> worth $1,850 and $8,868) because the stated value of each interest, and thus of
> the "property claimed as exempt," was within the limits the Code allows.

> . . . . the Code's definition of the "property claimed as exempt" in this case is
> clear. As noted above, §§ 522(d)(5) and (6) define the "property claimed as
> exempt" as an "interest" in [the debtor's] business equipment, *not* as the
> equipment *per se*. Sections 522(d)(5) and (6) further and plainly state that claims

to exempt such interests are statutorily permissible, and thus unobjectionable, if
the value of the claimed interest is below a particular dollar amount.

130 S.Ct. at 2661-2662 (citations omitted). The Supreme Court concluded that:

[w]here, as here, a debtor accurately describes an asset subject to an exempt
interest and on Schedule C declares the "value of [the] claimed exemption" as a
dollar amount within the range the Code allows, interested parties are entitled to
rely upon that value as evidence of the claim's validity. Accordingly, we hold that
[the trustee] was not required to object to [the debtor's] claimed exemptions in her
business equipment in order to preserve the estate's right to retain any value in the
equipment beyond the value of the exempt interest.

*Id.* at 2669.

As the Supreme Court noted in *Schwab*, the Debtor has an exemption right in the

interest, up to a certain dollar amount, here $12,500, but not an exemption right in the asset itself.

130 S.Ct. at 2661-2662. On her Schedule C the Debtor only claimed an exemption in a dollar

amount of $12,500; therefore, she did not alert the Trustee to the fact that she wished to exempt

anything other than her homestead exemption right in the maximum dollar amount allowed

under the statute. As such, her present interest is a right to receive $12,500 and the property

interest has not been re-vested in her. Whether she receives her $12,500 in value from the

proceeds of the sale of the life estate or a fee simple interest, the Debtor's interest is the same.

The court acknowledges that a recovery by the Trustee may have an effect on the Debtor

as noted in the *In re Herbst* case. If the Trustee is successful and the fee interest is returned to the

estate for sale, she would have to increase her payments. If the Trustee sells the fee, she could

lose her ability to stay in her home for the rest of her life. In *In re Herbst*, that interest was

sufficient even though the debtor argued he no longer had any interest. 76 B.R. 882. The court

found he was a "joint tenant and co-owner of the property at the center of [the] dispute." *Id.* at

884. The plan specifically provided that the amount recovered would be paid to unsecured

creditors. If the creditor prevailed, the debtor would be left with "the difficult choice of either

20

selling the residence or increasing his payments." *Id.* The court concluded that the "Debtor must

be included as a party in this action in order to protect his interest in the property and the right to

retain the property as his residence." *Id.*

The court distinguishes the holding in *In re Herbst* from the present case. First, the

Debtor has not proposed to include the value of the fraudulent transfer action in her Chapter 13.

In this case, the court is requiring her to include an additional amount in her plan in order to meet

the best interest of creditors test. That amount is an estimate of the value of the adversary

proceeding to the estate less the expenses of the litigation and costs of sale. Second, the court

finds that the Debtor is only entitled to protect her "interest." Under the court's interpretation of

541 and the *Schwab* interpretation of interests in exempt property, the Debtor has only a

monetary interest. The property itself is subject to sale by a trustee until it re-vests in the Debtor.

Finally, under *Arwood* and *Walls*, even if the life estate is an occupancy interest, the Trustee

could sell the remainder interest. Therefore, the court finds that the failure to include the Debtor

as an indispensable party will not impair her ability to protect the interest which she has now.

Accordingly, the court will DENY the Defendant's motion to dismiss for failure to include an

indispensable party.

### C.    Whether this Proceeding Should Be Dismissed for Failure to State a Claim

The Defendant also argues that the Complaint fails to name a specific creditor whom the

Debtor owed at the time of the alleged fraudulent transfer as required by 11 U.S.C. § 544(b)(1).

The Defendant cites *In re Tri-Star Technologies Co., Inc.*, in support of her position. 260 B.R.

319, 324 (Bankr. D. Mass. 2001). In that case the court noted that "the Trustee's derivative

standing under § 544(b) is dependent on the existence of at least one actual unsecured creditor

21

who could have avoided the challenged transfers." *Id*. However, there, the court was making its

determination on the Section 544 claim after a trial, not upon a motion to dismiss.

Other courts addressing the same argument as it pertains to a motion to dismiss have

noted that "a trustee need only identify a category of unsecured creditors to assert a claim under

section 544(b)." *Picard v. Cohmad Securities Corp. (In re Bernard L. Madoff Inv. Securities

LLC)*, 454 B.R. 317, 339 (Bankr. S.D.N.Y. 2011) (citing *Picard v. Chais (In re Bernard L.

Madoff Inv. Securities LLC)*, 445 B.R. 206, 234 (Bankr. S.D.N.Y. 2011); *In re RCM Global

Long Term Cap. Apprec. Fund, Ltd.*, 200 B.R. 514, 523-24 (Bankr. S.D.N.Y. 1996)). In *Chais*

the bankruptcy court noted:

> a trustee is not required to specifically identify a qualifying unsecured creditor in
> its complaint to assert standing under section 544 of the Code in accordance with
> the pleading requirements of Rule 8. At most, a trustee need only identify a
> category of unsecured creditors in whose shoes standing is being asserted.
> However, even such is not required; instead, simply pleading the existence of an
> unsecured creditor generally will suffice to satisfy Rule 8(a)(2).

445 B.R. at 234 (citations omitted). The Trustee's Complaint states that "the debtor has

unsecured debt in excess of $42,330.39, all of which is believed to have been incurred prior to

the time of the transfer to Defendants." Complaint, ¶ 12. The court concludes that the Trustee has

alleged enough facts to state a claim under the liberal pleading standards of Rule 8 based on the

acknowledgment of the existence of unsecured creditors prior to the date of the transfer.

Therefore, the Defendant's motion to dismiss for failure to identify a specific creditor pursuant to

Section 544 will be DENIED.

### IV.    Conclusion

The court finds that it has jurisdiction to address the merits of this fraudulent transfer

proceeding, but to the extent that it does not have such jurisdiction, the court will recast this

memorandum into proposed findings of fact and conclusions of law for the district court to

review *de novo*. *See Waldman*, 698 F.3d at 922. The court concludes that the Trustee's Complaint acknowledges the existence of an unsecured creditor at the time of the transfer, and that the Trustee's Complaint should not be dismissed on this ground. The court further finds that the Debtor is not a necessary party pursuant to Fed. R. Civ. P. 19(a). Therefore, the Defendant's motion to dismiss will be DENIED.

Finally, the court also finds that the lawsuit has a value in excess of $500 and that the Debtor's plan as currently proposed does not pay creditors more than they would receive in a Chapter 7 liquidation. The Trustee's objection to the plan is sustained. The debtor will have 10 days to file a modified plan in compliance with the court's order or the case will be reconverted to a Chapter 7.

The court will enter separate orders.

# # #